**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VINCENT DELEVA, JAMIE PINTO, and ELDDY TORRES, on behalf of themselves and others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF NEWARK,<br><br>*Defendant*. | No. 25-cv-2256 (MEF)(SDA)<br><br>**OPINION and ORDER** |

* * *

For purposes of this brief Opinion and Order, the Court assumes virtually full familiarity with the facts and procedural history of this case.

* * *

Three police department employees[1] sued the city[2] that operates the department. The employees are called "the Plaintiffs." The city is "the Defendant."

The gist of the lawsuit: the Plaintiffs were paid less than they were supposed to under the federal Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL"). See Amended Complaint - Class/Collective Action ("Complaint") (ECF 18) ¶¶ 10-14, 31-35.

In particular, the Plaintiffs claim that they received less overtime pay because the Defendant miscalculated their "regular rate" of pay --- and overtime is calculated as 1.5 times the regular rate. See id. ¶¶ 31-35.
Per the Plaintiffs, the Defendant was required to bake certain "bonus payments," id. ¶ 16, into its calculation of the Plaintiffs' "regular rate[s]" of pay. See id. ¶¶ 16, 19-20.

---

1 Vincent Deleva, Jamie Pinto, and Elddy Torres.

2 The City of Newark.

But the Defendant did not do so --- and so the Plaintiffs were shortchanged. See id. ¶¶ 32, 35.[3]

The Defendant has filed a motion to dismiss, mainly arguing that the Court should compel arbitration under a collective bargaining agreement. See Defendant, City of Newark's Brief in Support of Motion to Dismiss Amended Complaint Pursuant to F.R.C.P. 12(b)(6) ("Defendant's Brief") (ECF 19-1) at 9-18.

The motion is now before the Court.

* * *

[3] The specific "bonus payments" that must allegedly be folded in include: (i) "longevity pay," (ii) "stress pay" for employees "[a]ssigned to rotating shifts or shifts that do not begin between the hours of 5:45am and noon," (iii) "detective pay" for "work performed by investigators and detectives," (iv) "stipend[s]" for "work within the Police Division's Bomb Squad or Emergency Response Team," and (v) "stipend[s]" for certain "assignments involving the care, maintenance, and handling of dogs." Complaint ¶ 16. Per the Plaintiffs, these "bonus payments" paid on top of employees' "base hourly wage" when certain "objective criteria" apply. Id. ¶¶ 15-16. An important note here. The complaint does not explicitly allege that each Plaintiff (i) received each sort of "bonus payment," but (ii) was nonetheless not paid overtime based on that particular "bonus payment." This may create Article III standing problems. It is doubtful that a plaintiff who did not, say, get a bonus for working with dogs can then turn around and seek relief based on the theory that his overtime pay was lower than it should have been because it did not reflect a stipend for working with dogs. (And things come out no differently because the Plaintiffs are looking to represent a class here. See, e.g., Spokeo, Inc. v. Robins, 578 U.S. 330, 338 n.6 (2016).) This issue was mot raised by the parties. But it must be addressed. On or before August 7 at 5:00pm, the Plaintiffs shall file a very brief letter indicating how they seek to proceed. Whether they will seek leave to replead. Whether they will file a legal brief explaining why there is in fact standing for each Plaintiff as to each bonus payment. Or whether they will pursue a different course. After the August 7 letter comes in, an order will issue as to next steps.

A plaintiff's statutory claims must be arbitrated pursuant to an employment agreement when either of two boxes are checked. See Jones v. Does 1-10, 857 F.3d 508, 512 (3d Cir. 2017).

First, when the agreement's arbitration provision "clearly and unmistakably waives the [plaintiff's] ability to vindicate his or her . . . statutory right in court; and . . . the . . . statute does not exclude arbitration as an appropriate forum."[4] Id. (citing 14 Penn Plaza v. Pyett, 556 U.S. 247, 260 (2009)).

Or second, where "the plaintiff's [statutory] claim 'depends on the disputed interpretation of a [collective bargaining agreement ("CBA")] provision'" --- like the arbitration clause. Id. (quoting Bell v. Se. Pa. Transp. Auth., 733 F.3d 490, 494 (3d Cir. 2013)).

* * *

To satisfy the "clear-and-unmistakable-waiver standard," an "arbitration provision's wavier of a judicial forum for statutory claims must . . . be 'particularly clear' and 'explicitly stated.'" Darrington v. Milton Hershey Sch., 958 F.3d 188, 194 (3d Cir. 2020) (quoting Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 79-80 (1998)).

That test is not met here.

In Jones v. Does 1-10, for example, the Third Circuit noted that a collective bargaining agreement "explicitly provide[d] that '[a]ll claims that an employee has been discriminated against . . . in violation of applicable federal, state or local law shall be subject to the grievance and arbitration procedure as the

[4] The quoted standard indicates when federal claims under the FLSA must be arbitrated. And New Jersey law uses the same "clear and unmistakable" standard for arbitration of its own statutory claims. See Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 444 (2014) (citing Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)); see also Darrington v. Milton Hershey Sch., 958 F.3d 188, 193 (3d Cir. 2020) (stating that the court saw "no reason to review the waiver of a judicial forum for state statutory claims under a standard different from that for the waiver of a judicial forum for federal statutory claims") (citing Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 79-81 (1998)).

sole and exclusive remedy for violations.'" 857 F.3d at 513 n.17.

But the agreement did not have a "similar provision for FLSA disputes," id., so the court "agreed with the parties' concession that the collective bargaining agreement lacked 'a clear and unmistakable waiver of the employees' right to vindicate their FLSA claims in federal court.'" Darrington, 958 F.3d at 195 (quoting Jones, 857 F.3d at 513).

Jones marks the end of the road here. The Defendant has pointed to no provision in the governing collective bargaining agreement that "explicitly," Darrington, 958 F.3d at 194, says anything about arbitration for FLSA claims or for NJWHL claims --- or even for statutory claims in general. And that is precisely what was missing from the agreement in Jones. See 857 F.3d at 513 & n.17; Darrington, 958 F.3d at 195.

The Defendant's counterargument zeroes in on a provision in the CBA here that defines a "grievance" as "any difference or dispute arising over the application or interpretation of the terms and conditions of this Agreement," Defendant's Brief at 10 (quoting Exhibit 3 to Defendant's Brief ("CBA") (ECF 19-2) at 4-6),[5] and lays out procedures applicable to disputes that fall under that definition. See id.

That says nothing on its face about the FLSA, NJWHL, or statutory rights. So on the Defendant's argument it must be an implicit waiver. Darrington requires an explicit waiver, though. And so does Jones.

---

[5] The relevant collective bargaining agreement was not attached to the Plaintiffs' complaint. It was put before the Court as an attachment to the Defendant's motion to dismiss. See Exhibit 3 to Defendant's Brief ("CBA") (ECF 19-2); see also Defendant's Brief at 17-19 (arguing that the Court should consider the agreement when evaluating the motion to dismiss). In opposition to the Defendant's motion the Plaintiffs have not argued that the attached CBA is inauthentic or that it is otherwise unable to be considered by the Court. See Plaintiffs' Memorandum of Law in Opposition to Defendant's Second Motion to Dismiss ("Plaintiffs' Brief") (ECF 20) at 8-16 (arguing that the Plaintiffs' claims do not require interpretation of the agreement). So the Court assumes arguendo that the CBA at Exhibit 3 to the Defendant's motion is legitimate and properly before the Court.

* * *

The Court has concluded that the relevant arbitration provision does not establish what it needs to --- a "clear and unmistakable" waiver of the Plaintiffs' ability to come to court and sue for the alleged violations of their statutory rights.

That means arbitration can be required here only if the Plaintiffs' FLSA claims "'depend[] on [a] disputed interpretation of a [collective bargaining agreement] provision.'" Jones, 857 F.3d at 512 (quoting Bell, 733 F.3d at 494).[6]

How might they? The Defendant has two arguments. But neither works.

* * *

The Defendant first argues that the Plaintiffs' claims require interpretation of the CBA's use of the phrase "rate of pay." See Defendant's Brief at 11; see also CBA at 7 (noting that employees required to work certain overtime "shall be paid" at a rate of "time and one half (1 ½) his/her regular rate of pay") (emphasis added).

But the Supreme Court has turned that argument aside.

"[T]he determination of [an employee's] regular rate [under the FLSA is] a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in . . . wage contracts." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 425 (1945) (emphasis added); see Jones, 857 F.3d at 514 (citing Walling for this proposition); see also Smiley v. E.I. Dupont De Nemours & Co., 839 F.3d 325, 330-31 (3d Cir. 2016) (citing Walling and explaining how "regular rate" is to be calculated under the statute and relevant regulations).

* * *

Second, the Defendant argues that the Plaintiffs' claims "depend[] on [a] disputed interpretation of a CBA provision,"

[6] The Court considers only the Plaintiffs' federal claims as to this point --- because the Defendant has not meaningfully argued that the Plaintiffs' state-law claims need to be arbitrated on account of their depending on a disputed CBA interpretation. Cf. Defendant's Brief at 15.

Jones, 857 F.3d at 512, because any determination as to whether certain "bonus payments" are included in the Plaintiffs' "regular rate" of pay "must be drawn from what happens under the employment contract." Id. at 12-15.[7]

But the Third Circuit has rejected this.

Look again, for example, to Jones. There, the plaintiff-employees argued that their employer had "underpaid them for overtime" by "fail[ing] to include certain hourly wage differentials in the calculation of the plaintiffs' regular rate of pay, resulting in illegally low overtime rates." 857 F.3d at 510. In response, the employer-defendant argued that the plaintiffs' claims constituted a dispute over terms of the CBA "that must first be sent to arbitration," because certain provisions in the CBA laid out the various hourly wage differentials employees were entitled to, and noted that some of these differentials were intended to "include a payment for overtime." Id. at 513.

The Third Circuit disagreed. The defendant's "argument fail[ed] because the plaintiffs' overtime claim is governed by the FLSA," id. at 513-14, and the FLSA "requires [courts] to bypass how [a] CBA breaks down the pay differentials, and look only to whether these pay differentials fit into the statutory definition of remuneration that must be included in the calculation of an employee's regular hourly rate of pay." Id. at 514.

Looking to the text of the FLSA, the court of appeals emphasized that "[t]he regular rate of pay is defined as '<u>all</u> remuneration for employment paid to, or on behalf of, the employee,' and the statute explicitly sets out a <u>limited list of eight exceptions</u> to this rule of 'all remuneration.'" Id. (emphasis added) (quoting 29 U.S.C § 207(e)). So "[a]ll remuneration for employment paid which does not fall within one of these . . . exclusionary clauses must be added into the total compensation received by the employee before his regularly hourly rate of pay

[7] See also id. at 13 (arguing that because these bonus payments are "outlined and detailed in the CBA," the issues at hand are "inherently tied to the terms and provisions of the CBA"); id. at 8 ("To the extent Plaintiffs' claim is instead premised on the inclusion of discretionary bonuses in the overtime rate, that contention again turns on issues of contract interpretation and the specific context and nature of each discretionary or bonus payment.").

is [to be] determined." Id. (second alteration in original) (quoting Smiley, 839 F.3d at 330).

Because of this, the court concluded that "whether the wage differentials should be included in the regular rate of pay depends not on any labels assigned to them by the CBA, but on whether they fit into one of the statutory exclusions." Id. Thus, regardless of any CBA provisions detailing application of the wage differentials, "the plaintiffs' miscalculation of overtime rate claim [did] not depend on any disputed term of the CBA, and, therefore, need not be sent to arbitration." Id.[8]

Jones is dispositive.

Here, the Plaintiffs have not alleged that the Defendant "violated the terms of [the collective bargaining agreement] in any way." Bell, 733 F.3d at 495. Instead, they argue that they received less overtime pay than they were statutorily entitled to because the Defendant improperly failed to consider certain "bonus payments" when calculating the "regular rate" of pay --- which, in turn, is used to calculate the amount of overtime they are paid. See Complaint ¶¶ 31-35.

But how to calculate the "regular rate" that is used as an overtime baseline is a statutory question, under both federal

---

[8] To roughly the same effect as Jones: Bell v. Southeastern Pennsylvania Transportation Authority, 733 F.3d 490 (3d Cir. 2013). In Bell, the employee-plaintiffs sued under the FLSA to recover unpaid overtime that failed to account for certain work done before the start of each plaintiff's "daily run." Id. at 491. Despite the fact that the employees' CBA included provisions stating that this work would not be included in any calculations for overtime pay, see id. at 492-93, the Third Circuit concluded that the plaintiffs' claims did not depend on a disputed interpretation of a CBA provision. See id. at 496. In so holding, the Third Circuit emphasized that the Bell plaintiffs did "not contend that they [were] entitled to additional payment under a CBA." Id. at 495. "Indeed, the [plaintiffs did] not allege that [the defendant] violated the terms of the CBAs in any way." Id. Rather, the plaintiffs' "FLSA claim exist[ed] independently of any rights they have under their respective CBAs," so "resolution of [that] claim" did not "depend[] on the resolution of a disputed reading of the CBAs." Id.

and state law. See 29 U.S.C. § 207(e); N.J.S.A. §§ 34:11-56a1(e), 34:11-56a4(b)(1).

So the key questions to work through are (i) whether the alleged "bonus payments" invoked by the Plaintiffs are indeed a part of their "regular rates" under the statutes, and/or (ii) whether those payments fall into one of the enumerated statutory exceptions.

These questions turn on how to read the statutes. Not on how to read the CBA. So there is no reason to send these questions to an arbitrator. See Jones, 857 F.3d at 514; Bell, 733 F.3d at 495.

* * *

No arbitration provision "clearly and unmistakably waives" the Plaintiffs' ability to sue in court for alleged violations of their statutory rights. And the Plaintiffs' statutory claims do not "'depend[] on the disputed interpretation of a [collective bargaining agreement] provision.'" Jones, 857 F.3d at 512 (quoting Bell, 733 F.3d at 494).

In light of this, there is no basis for compelling arbitration here. The motion at ECF 19 is denied.[9]

---

[9] The Defendant purports to make two other arguments for dismissal. First, for failure to state a claim under Federal Rule 12(b)(6). See Defendant's Brief at 5-6. And second, on the argument that the Plaintiffs' FLSA claim in particular should be dismissed because the Defendant's decision to "issu[e] payment on a 14 day pay cycle" to police officers does "not violate[] 29 U.S.C. § 207(k)." Id. at 7 (cleaned up). The Court declines to consider these. At the motion to dismiss stage, the burden is on the movant to show that the plaintiff has failed to state a claim. See Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772-73 (3d Cir. 2013); Roberts v. City of Newark, 2025 WL 2055263, at *2 (D.N.J. July 22, 2025) (quoting Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)); Hwang v. Pobicki, 2026 WL 1121900, at *2 n.8 (D.N.J. Apr. 24, 2026). And here, the Defendant has barely attempted to do so. As to the first argument, the Defendant simply recites the general standard for evaluating a motion to dismiss, without looking to apply that standard to the complaint. See Defendant's Brief at 5-6. And as to the second point, the Defendant has not pointed to anything in the complaint that

IT IS on this 31st day of July, 2026, **SO ORDERED.**

____S/Michael Farbiarz_____
Michael E. Farbiarz, U.S.D.J.

suggests that the Plaintiffs are contesting the Defendant's use of a 14-day pay period. Cf. id. at 7-8.